FILED - GR
February 21, 2013 2:29 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY _anm / _____ Scanned: AM /2-21

# UNITED STATES OF AMERICA
# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRADLEY KEITH SLEIGHTER,

    Plaintiff,

Case No. 1:12-cv-0763

Honorable Janet T. Neff

v.

KENT COUNTY CORRECTIONAL FACILITY
 ADMINISTRATION,
UNDERSHERIFF JON HESS and
 CAPTAIN RANDY DEMORY,

    Defendants

## MOTION TO CERTIFY CASE 1:12-cv-0763 as "CLASS ACTION"

## EXPEDITED CONSIDERATION REQUESTED

    1. I, Bradley Keith Sleighter, pro se, and in forma pauperis, come before the court and respectfully petition the court to certify my complaint against the Defendants as "Class Action". I rely upon the information detailed in my "First Amended Complaint" as the basis for this certification. I also believe that case 1:12-cv-0763 complies with the requirements outlined in Rule 23 of the Federal Rules of Civil Procedure (FRCP); specifically:

    2. The following listed references 4 thru 16 are taken directly from the "First Amended Complaint" (FAC). The <u>underlined</u> and **bold faced** sections make clear reference to a larger group of which the Plaintiff is a representative member. My "First Amended Complaint" was written in the anticipation of later certifying it as "Class Action". The reason for the short delay in filing this motion is due to the complex nature of the research required to verify, that in fact, it

qualifies to be certified as "Class Action"; my "First Amended Complaint", filed and entered December 4th, 2012, is the starting point at which this motion is commenced.

    a. "**Expedited Consideration Requested**". Where the relief requested by a motion may be rendered moot before the motion is briefed in accordance with the schedules set forth, an expedited consideration is respectfully requested. Also, to prevent any further delay in the proceedings of this case, and upon a ruling allow the parties involved to commence with their "*prosecution(s)*" or "*defense(s)*" accordingly, in a timely manner.

    b. It further warrants certification as "Class Action" considering the amicus curiae suites brought by the United States Department of Justice, Civil Rights Division, Special Litigation Section concerning denial of kosher meals to incarcerated inmates within the Texas Department of Corrections, case number 3:07-cv-574, U.S. District Court for the Southern District of Texas, Galveston Division. Also the same suite was brought against the Florida Department of Corrections, case number 1:12-cv- 22958, in the U.S. District Court for the Southern District of Florida.

3. I now come before the court and believe my "FAC" qualifies and meets the requirements of FRCP Rule 23, and with this motion I will support my position of having my "FAC" considered as the *starting point* for this "class action" suite.

## INFORMATION (BRIEF) IN SUPPORT OF 'CLASS ACTION CERTIFICATION' PRESENTED IN FIRST AMENDED COMPLAINT

.

4. By refusing to offer kosher meals, or an acceptable alternative, the Kent County Correctional Facility (KCCF) forced me **and continues to force it's inmate population to violate their core religious beliefs on a daily basis**, in violation of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. ~ 2000cc ("RLUIPA"). (See "First Amended Complaint" [FAC] §1).

5. **Keeping kosher is a central tenet of Judaism and other religious traditions observed by inmates incarcerated at KCCF**. KCCF's refusal to provide me with a kosher meal, or an acceptable alternative, burdened me substantially in my civil right to have "free exercise of religion". (FAC § 2).

6. I seek *declaratory* and *injective* relief to remedy Defendant's violations of the law, and **to ensure that KCCF implements substantial and sustainable reforms that guarantee the religious freedoms protected by RLUIPA.** (FAC § 9).

7. Defendant Under Sheriff of KCCF is the ultimate decision maker with authority to approve all KCCF policies, including its dietary policies. The current Under Sheriff of KCCF is Jon Hess, who is being sued in his official and personal capacity. The captain of KCCF operations is Captain Randy Demory, who signed the Aramark Religious Meals Policy, and **played a role in denying a religious diet to me and other inmates at KCCF**, and is being sued in his official and personal capacity. (FAC § 12).

8. Venue is proper in U.S. District Court for the Western District of Michigan Southern Michigan pursuant to 28 U.S.C. ~1391(b). Defendants operate KCCF, located in the State of Michigan, County of Kent and the City of Grand Rapids. **Defendants incarcerate in the KCCF inmates who desire and have desired to keep kosher as well as adhere to other religious dietary requirements of their faith**; and all of the events, actions, lack of actions, omissions giving rise to this claim have occurred in the KCCF. (FAC § 17).

9. **KCCF's refusal to provide kosher meals and other religiously appropriate meals violates and has violated the federal rights of its inmate population, including the plaintiff. KCCF's dietary policies force inmates, with a religious basis for consuming kosher and other religious based meals, to violate their core religious beliefs on a daily basis.** (FAC § 18).

10. **The substantial burden that the KCCF dietary policy imposes on its inmate population** is not necessary to achieve any compelling state interest. **Religious diets** have not constituted a "threat to the security and/or the well order of the institution" as evidenced by the Federal Bureau of Prisons, the Michigan Department of Corrections and most other correctional facilities throughout the country which, in fact, offer kosher and **other religious diets** while still achieving governmental interests indistinguishable from those of KCCF's. (FAC § 19).

11. **KCCF offers no acceptable alternatives for inmates seeking to practice and sustain their religious dietary beliefs.** (FAC § 22).

12. Adherence to kosher law requires that one follow the Jewish Laws of Kashrut, outlined in the Jewish Mishna, **and is common knowledge among the Jewish Religion**, an established major religion throughout the world, including the United States, the State of Michigan and the City of Grand Rapids. (FAC § 24).

13. **Defendants do not provide kosher or other appropriate meals to inmates in their custody who request the meals in accordance with their religious beliefs**. (FAC § 28).

14. **Defendants denial of kosher or other religiously appropriate meals** constitutes a substantial burden on the religious exercise **of prisoners in their custody**, and that the denial of these meals is not the least restrictive means to further, secure or insure any compelling governmental interests. (FAC § 29).

15. Therefore, KCCF's refusal to provide **religiously appropriate meals** violates RLUIPA, 42 U.S.C. ~2000cc. (FAC § 30).

16. "First Amended Complaint",

Prayer for Relief:

RLUIPA authorizes the plaintiff to seek injunctive and declaratory relief for Defendants failure to provide a kosher diet to the plaintiff **as well as not providing other religious diets to inmates requesting such.**

    a. Declare that the Defendants have violated the established provisions of RLUIPA by failing to provide the plaintiff with a kosher diet **and provide others with appropriate religious diets upon request and who desire to exercise their religious beliefs.**

# FACTUAL ALLEGATIONS

17. Initially, as a first step, this action must satisfy all four of the prerequisites mandated by subsection (a) of Rule 23, FRCP: **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

18. By refusing to offer kosher meals, and other religious diets, the Kent County Correctional Facility (KCCF) forced me and continues to force **it's inmate population** to violate their core religious beliefs on a daily basis, in violation of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. ~ 2000cc (RLUIPA). The implications of this denial are all encompassing and broad in their effects. By denying kosher meals to its inmate population KCCF is denying all Jewish people, and all others who adhere to kosher dietary law,

their right to "free exercise of religion". By denying other religious based meals KCCF also affects a large number of its inmate population in the same way. A person in jail, unable to post bond (pre-trial), is presumed "innocent" and KCCF is a publically accessible facility; one would be denied a constitutionally guaranteed civil right when KCCF denies someone, in their custody, a religiously based diet without, first, fulfilling the requirement of the 5th Amendment clause of "due process" to legally deny any right or privilege. It is illegal to do so without an administrative hearing; which the Defendants fail to do on a regular basis.

19. This would fulfill the requirement of "numerosity" required by FRCP Rule 23 (a)(1). It would also qualify as a "class" of which I am a representative member. It fulfills the "question of *law*" and it is "common to the class"; fulfilling the requirements of Rule 23 (a)(2).

20. The scope of this denial affects adherents of an undetermined number of religions. The following is an example, but not limited to:

## Belief-based diets[1]

a. Buddhist diet: While Buddhism does not have specific dietary rules, most Buddhists practice vegetarianism based on a strict interpretation of the first of the Five Precepts.

b. Edenic diet: A diet based on what Adam and Eve are believed to have consumed in Garden of Eden. Usually either vegetarian or vegan, and based predominantly on fruit

c. Hallelujah diet: A form of Christian vegetarianism developed in the 1970s. The creators interpret a verse from the Bible as suggesting that Christians should only consume seed bearing plants and fruits.[2]

d. Hindu and Jain diets: Followers of Hinduism and Jainism often follow lacto-vegetarian diets, based on the principle of Ahimsa (non-harming).

e. Islamic dietary laws: Muslims follow a diet consisting solely of food that is halal – permissible under Islamic law. The opposite of halal is haraam, food that is Islamically Impermissible. Haraam substances include alcohol, pork, and any meat from an animal which was not killed through the Islamic method of ritual slaughter (Dhabiha).

f. Kosher diet: Food permissible under Kashrut, the set of Jewish dietary laws, is said to be Kosher. Some foods and food combinations are non-Kosher, and failure to prepare food in accordance with Kashrut can make otherwise permissible foods non-Kosher.

---

[1] "List of diets", Wikipedia (Internet source).
[2] The Holy Bible, Genesis 1:29-30.

g. Word of Wisdom: The name of a section of the Doctrine and Covenants, followed by members of the Latter Day Saint movement (Mormons). Dietary advice includes only eating meat "in times of winter, or of cold, or famine".

h. Seventh - Day Adventist: Since the 1860s when the church began, wholeness and health have been an emphasis of the Adventist church. Adventists are known for presenting a "health message" that recommends vegetarianism and expects adherence to the kosher laws in Leviticus 11. Obedience to these laws means abstinence from pork, shellfish, and other foods proscribed as "unclean" (non-kosher).[3]

i. Vegetarianism: In a recent decision in *Chenzira v. Cincinnati Children's Hospital Medical Center*, Case No. 1:11-cv-00917, the U.S. District Court for the Southern District of Ohio in Cincinnati held that sincerely held beliefs in veganism could plausibly be considered religious beliefs protected against religious discrimination under Title VII of the Civil Rights Act of 1964 and Ohio state law. The Court rejected the argument that veganism was merely a social philosophy or dietary preference.

j. Black Hebrew Israelites: are groups of people mostly of Black African ancestry situated mainly in the United States who believe they are descendants of the ancient Israelites. Black Hebrews adhere in varying degrees to the religious beliefs and practices of mainstream Judaism, including Jewish dietary law (kosher), but mainly advocate a vegetarian diet.[4]

21. Some people's dietary choices are influenced by their religious, spiritual or philosophical beliefs, which fulfill the definition of "sincerely held religious belief". It does not require the attendance of any specific religious organization, church, synagogue, mosque, ect, and/or the adherence to any other set of rules, formal beliefs and/or precepts held by any particular religion, sect, or religious doctrine.

22. The legal definition of "sincerely held religious belief" is intentionally vague to provide protection and accommodation for a broad spectrum of religious observances, practices and beliefs, not merely those beliefs based upon the organized or recognized teachings of a particular religion. Therefore, religious beliefs need not be acceptable, logical, consistent or comprehensible to others to be entitled to protection under the "Free Exercise" clause of the First Amendment of the United States Constitution and "RLUIPA", and the courts have not presumed to determine the place of a particular belief in a religion or the plausibility of a religious claim. In short, the fact that no religious group espouses such beliefs or that the religious group to which the individual professes to belong may not accept such belief, will not determine whether the belief is or is not a "sincerely held religious belief".

---

[3] Seventh - day Adventist, Health and Diet, Wikipedia (Internet source).
[4] Black Hebrew Israelites, Wikipedia (Internet source).

23. The Federal position on this matter is not new to the courts as exemplified in the United States Equal Employment Opportunity Commission's definitions and federal case law concerning religious beliefs. The U.S. Supreme Courts' decisions dealing with the definition of "sincerely held religious belief" is clarified in numerous landmark legal rulings involving "Conscientious Objectors" to military service and/or participation in "war". These rulings will not be enumerated here but will be raised as supporting evidence in my "Second Amended Complaint" against the Defendants, upon leave of the court and certification as a "Class Action" suite.

24. The list of religious and/or belief based diets all share one thing in common and that is either the removal of meat (animal flesh) or its preparation according to "religious law"; such as Jewish dietary law and Islamic dietary law.

25. This description of religious diets, and its implications, also supports "numerosity" as well as "class", and clearly establishes "sincerely held religious belief".

26. Jerusalem District Court[5] Judge Ben-Tzion Greenberger ruled that <u>Lawrence Seth Wayne</u>, who had been sentenced by a Florida court to 19 years in prison for the 1998 road accident, **could not be extradited** to a state that would violate his right to practice his religion by denying him kosher meals.

27. Greenberger thus accepted Wayne's argument that sending him back to Florida would violate Israel's Extradition Law, which forbids extradition to a foreign country if this is liable to "harm public policy or a crucial interest of the State of Israel." If he was not assured kosher food, extraditing Wayne would constitute "a serious violation of his <u>**most basic rights to freedom of religion and worship**</u>," Greenberger said.[6]

28. The above example introduces the idea of the wide reaching and broad *"legal questions"* presented to a government body denying an individual a religiously based diet; which is International in scope and could be problematic in the pursuit of justice within the U.S.

29. Kent County Correctional Facility serves the Grand Rapids area, which is no longer just a predominately "Single Denomination" city. Grand Rapids is now, in the 21st century, and is a multi-cultural, multi-ethnic, multi-racial city which exhibits religions practices from around the world, as well as having a large Jewish community. These religious practices require protection under the law. I, the plaintiff, come before the court as a representative of this "class" of people who in pursuit of "free exercise of religion" and *"equal protection"* under the law

---

[5] "The (Israeli) District Courts constitute the middle level courts of the judicial system, and have jurisdiction in any matter not within the sole jurisdiction of another court". See Wikipedia, Israeli judicial system, District Courts (Internet source).

[6] <u>Private Consulting Services</u> "TOT", serving the Orthodox Jewish Community Worldwide, February 14, 2012 (Internet source).

respectfully submit that this case qualifies for certification as a "Class Action" suit, of which I am a representative member.

30. KCCF contracts its food services to <u>Aramark</u> which has provisions for an inmate requesting kosher meals as well as other religious diets. These diets are detailed in the Aramark "*Medical Nutrition Therapy and Religious Meals Manual*" and page 53 details a diet provision to serve as kosher and halal; but do not meet the guidelines of kosher or halal. It does, however, allow a diet tray in which non-kosher or "haraam" (Islamic term for "impermissible") foods are removed. Moreover, KCCF has disregarded its food service provider's policy in providing religious diets and does continue to provide medical diets; meaning they are capable of providing a religious diet and choose not to do so (acting in a *personal capacity*). This policy was agreed to and signed December 2009 by both Captain Randy Demory and the jail doctor, Dr. Yacob. **<u>KCCF's policy</u>** of going against Aramark's provisions for religious diets (which complies with state correctional and federal correctional standards), by not providing religious diets has affected, does affect, and will continue to affect an undetermined number of people. This also indicates "numerosity" and indicates that the **defendant's jail policy** of denying religious diets to its inmate population fulfills the following requirement:

31. Rule 23(a)(2) requires that there be 'questions of law or fact common to the class.' This requirement is satisfied 'as long as the members of the class have been affected by a *general* policy of the defendant, and the general policy is the focus of the litigation.' *Sweet v. General Tire & Rubber Co.*, 74 F.R.D. 333, 335 (ND Oh 1976).

   a. What are necessary for certification are common issues the resolution of which will advance the litigation. In cases involving the question of whether a defendant has acted through an **illegal policy or procedure**, commonality is readily shown because the common question becomes whether the defendants in fact acted through an **illegal policy or procedure**. For this reason, cases of this sort are most often approved as class actions. The policy of KCCF denying religious diets to its population is clearly the issue in question and clearly raised in my "First Amended Complaint". The Defendants *policy* of not providing a religious diet to incarcerated individuals addresses two questions of law. First, it addresses the question of denying a request for a religiously based diet without "*due process*" of law. Second, the question of the jail's policy violating an individual "free exercise of religion" fulfils the requirement or Rule 23 (a)(2).

32. Rule 23 (a)(3) <u>the claims or defenses of the representative parties are typical of the claims or defenses of the class.</u> I will introduce the complaint (case 1:12-cv-00950) filed by Saabir Abdullah, a Muslim inmate incarcerated at KCCF, who alleges that the Defendants engaged in violations of his religious rights, mainly that he did not receive a "no-meat diet" upon his request at the time of his admission. I claim that he qualify as part of the "class" in question as well as all others who are being denied a religious based diet as a result of the Defendant's policy of "no religious diets" at KCCF. It should be noted that at the time Saabir

Abdulla and I filed our complaints there were a number of "Seventh Day Adventists" (a Christian Denomination) receiving the "lacto-ovo vegetarian diet" outlined in Aramark's "Medical Nutrition Therapy and Religious Meals Manual", though we are not officially raising the question of "equal protection" or "discrimination" related to this incident, at this time.

33. Rule 23 (a)(4) <u>the representative parties will fairly and adequately protect the interests of the class</u>. I would assert that I have the knowledge and understanding of cultural and religious beliefs throughout the world and am well informed of their dietary implications, practices, and requirements. I know this through empirical knowledge as well as a result of experiential knowledge. My "First Amended Complaint" shows my concern for all parties of this "class" and that I share the same interests of the "class" and that is to see "justice" prevail. My knowledge of jurisprudence is sufficient to proceed as a plaintiff representative of this "Class Action" suit. I have the time, education, and resources (community religious interests) to commit myself to the "class".

34. **Ability to Institute Separate Actions**. When individual lawsuits may not be practical due to economic or other concerns, certification is <u>favored</u> to provide those people a remedy otherwise inaccessible. Cf. *South Carolina Nat Bank v Stone,* 139 F.R.D. 325, 335 (DSC) (Absence of individual suits indicates putative class will not receive the protection they need unless this case is certified). When class members are in a poor position to obtain legal redress because they are ill-informed or because such relief is disportionately expensive, certification is also <u>favored</u>. *Gordon v Forsyth County Hosp. Auth., Inc.,* 409 F. Supp 708, 717 (MDNC 1976).

35. **Identity of Members Known v Unknown**. When the plaintiff has demonstrated that the class of persons he or she wishes to represent <u>exists</u>, the fact that they are not specifically identifiable supports rather than bars the bringing of a class action because *"joinder"* is impracticable. *Doe v Charleston Area Medical Ctr., Inc.,* 529 F.2d 638, 645 (4th Cir. 1975). Moreover, it is not necessary that the members of the class be so clearly and completely identified that any member can be presently ascertained. *Haywood v Barnes,* 109 F.R.D. 568, 576 (EDNC 1986).

36. **Relief Sought**. If the relief sought and to which class members may be entitled is uniform throughout the class, certification of the class is <u>favored</u>. *Cf. Doe I v. Guardian Life Insurance Company of America,* 145 F.R.D. 466, 471 (ND IL 1992) (Nature of the relief sought consideration in certification decision).

    a. If this case is certified as "class action" then the main form of relief sought will be *declaratory* as well as *injunctive* relief, which will be for the benefit of the "class" as a whole and to see justice prevail.

    b. If, upon further research, *punitive* relief is applicable then it will be sought secondary to declaratory and injunctive relief. It should be noted that *punitive relief* was raised in the original complaint and in the "First Amended Complaint".

37. **The commonality test** of Rule 23(a)(2) is met when there is "at least one issue" whose resolution will affect all or a significant number of the putative class members. Just as common issues of law are not required for all class members, common issues of fact are not required to be present among all class members either. *Haywood v Barnes,* 109 F.R.D. 568, 577 (EDNC 1986). Class actions may be certified on limited common issues of fact. *Central Wesleyan College v W.R. Grace,* 6 F.3d 177, 184 (4th Cir. 1993). The common issue in this case is whether inmates at the KCCF are being denied their civil right to "free exercise of religion" by the Defendant's policy of not allowing it's food service provider, Aramark (or any future food service provider), to comply with its own policy outline in its "Medical Nutrition Therapy and Religious Meals Manual", which is patterned in accord with state and federal standards for religious diets of its inmate population. It is alleged that the Defendants have engaged in numerous civil rights violations by denying "religious based diets" at KCCF to its inmates.

38. The adequacy standard is met if: (1) the named plaintiff has interests common with, and not antagonistic to, those of absent class members; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation. *Sosna v Iowa,* 419 U.S. 393, 403, 95 S.Ct 553, 42 L.Ed 2d 532 (1975).*See also, Taylor v. Flagstaff Bank,* 181 F.R.D. 509 (ND Ala 1998); *Kuper v. Quantum Chemical Corp.,* 145 F.R.D. 80, 82 (SD Oh 1992)(Both attorney and representative are considered on question of adequacy); *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,* 2000 U.S. App. LEXIS 22162 at *22 (2d Cir. 2000); *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992). I would argue that without an attorney the Plaintiff, pro se, is capable of such litigation and can meet the requirements of *adequacy* other than the provision of "experience".

39. Assuming the four prerequisites to Rule 23(a) are met, the second step demands the action fit within **one or more** subsections of (b) of the rule:

> (2) the party opposing the class has **acted** or **refused to act** on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

40. It is alleged that the Defendants have **acted** by instituting a "*policy*" of not providing religiously based diets and have **refused to act** as a result of said "*policy*" which affects the entire "class". It is claimed that *declaratory* and/or *injunctive* relief is appropriate respecting the "class" as a whole; or

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

41. It is alleged that there is a question of law in the above subsections 18 and 30 of this brief, clearly outlining a "question of law". The main theme of the "First Amended Complaint"

outlines a "question of law" of which the Plaintiff clearly petitions the court to clarify. I claim that "Class Action" certification in this complaint is superior to my original complaint where I was the sole Plaintiff.

> Rule 23 (b)(3) continues: The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by a class member;
>
> (C) the desirability of concentrating the litigation of the claims in the particular forum.

42. Rule 23 (b)(3)(A)(B) and (C) all appear to apply in this case. Thus fulfilling the second step required by Rule 23.

## CLAIM IN SUPPORT OF CERTIFYING CASE 1:12-cv-0763 AS "CLASS ACTION"

43. The plaintiff incorporates by reference the information and allegations set forth in paragraphs 1-42 and is fully set forth herein.

44. The Kent County Correctional Facility Administration, Under Sheriff Jon Hess and Captain Randy Demory are the defendants of civil action 1:12-cv-1983. The Defendants are represented in this action by: Peter A. Smit (P278896) of VARNUM LLP.

45. The Plaintiff, Bradley Keith Sleighter, pro se, and in forma pauperis, is representative of a "class" affected by the Defendants actions and/or lack of actions; past, present, and future.

46. The "class" is too numerous to file individual suits against the Defendants.

47. The "class" is, also, representative of currently, past and future incarcerated **pre-trial** individuals who are unable to post bond. The Defendant's religious meals policy denies them "due process" of law by denying them a religiously based diet before being convicted of a crime.

48. The "class" has a vested interest in the outcome of the Plaintiff's complaint 1:12-cv-0763.

49. The Plaintiff has fulfilled the requirements to certify this case as "Class Action" as outlined in Federal Rules of Civil Procedure, Rule 23;

    a. The question of class certification is a procedural one distinct from the merits of the action. *Pickett v. IBP, Inc.,* 182 F.R.D. 647-49 (MD Ala. 1998) *citing Garcia v. Gloor,* 618 F.2d 264 (5th Cir 1980). Plaintiffs need not establish their own case on the merits before a determination of class certification is made by the court. *Eisen v Carlisle & Jacquelin,* 417 U.S. 156, 94, S.Ct 2140, 40 L.Ed 732 (1974). In evaluating a motion for class certification, **courts should generally take the plaintiffs' allegations as true**. *See Hardin v. Harshburger,* 814 F. Supp. 703, 706 (ND Ill 1993).

    b. The requirement that a class be clearly defined is designed primarily to help the trial court manage the class. *See Hartman v. Duffey,* 19 F.3d 1459, 1471 (DC Cir. 1994). It is not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that "the general outlines of the membership of the class are determinable at the outset of the litigation" (which was clearly set forth in the Plaintiff's "First Amended Complaint"), 7A Wright & Miller, *Federal Practice and Procedure* § 1760 at 118. In other words, the class must be sufficiently definited "that it is administratively feasible for the court to determine whether a particular individual is a member". *Id.* at 121. *See Pigford v. Glickman,* 182 F.R.D. 341 (DC DC 1998).

    c. The United States Federal Courts enforce "RLUIPA" in state and local jurisdictions across the country and, given the important liberties at stake, the government has a strong interest in ensuring that "RLUIPA's" requirements are vigorously and uniformly enforced. "Class Action" certification of case 1:12-cv-073 will serve the interests of the "class" as well as governmental interests.

    d. In 2000, Congress enacted "RLUIPA" after "documenting in hearings spanning three years that 'frivolous or arbitrary' barriers impeded institutionalized persons' religious exercise."*Cutter* v. *Wilkinson,* 544 U.S. 709, 716 (2005) (citing 146 Congo Rec. 16698, 16699 [2000]). Asthe Supreme Court explained that an institution's refusal to accommodate a religious diet is the type of restriction on religious exercise that Congress enacted "RLUIPA" to eliminate. *See Cutter, 544* U.S. at 716 n.5 (noting "typical examples" of barriers impeding religious exercise included refusal to provide halal food to Muslim inmates while offering kosher food to Jewish prisoners, and unwillingness to provide Jewish inmates with sack lunches to facilitate breaking fasts after nightfall). "RLUIPA's" purpose was to "protect institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Id* at 721. In light of "RLUIPA's" intent "Class Action" certification is superior, desirable, and favorable in this case.

## **PRAYER FOR RELIEF**

50. It is respectfully requested that the court certify case number 1:12-cv-0763 as a "Class Action" litigation; and

51. that the Plaintiff's "First Amended Complaint" is representative of the "class" and its past, current and future interests.

52. That the Plaintiff be allowed a "Second Amended Complaint" upon certification of his complaint as "class action", to further tailor the complaint to the "class" and it's interests.

53. If the court certifies case number 1:12-cv-0763 as a "class action" suit that upon certification the court would: in compliance of Rule 23 (C)(1) (B) *Defining the Class; Appointing Class Counsel:* an order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g); Class Counsel: (1) *Appointing Class Counsel:* unless a statute provides otherwise, a court that certifies a class must appoint class counsel.

54. that in accord with Rule 23 (C)(2)(B) *For (b)(3) Classes.* For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort; and

55. allow any other provisions that Rule 23 details; that would further facilitate the "class" in their pursuit of justice and *relief.*

a. Order such other relief as the interest of justice may allow and require.

### **Attempt to Obtain Concurrence**

56. In accordance with Local Rules of Civil Practice and Procedure, United States District Court for the Western District of Michigan, Rule 7.1 (d) "Attempt to obtain concurrence", I, the plaintiff, submit a copy of the correspondence sent to the Defendant's attorney in compliance with this rule (see exhibit 1).

Respectfully submitted by the Plaintiff:

Dated: February 20th, 2013.

*Bradley K. Sleighter*

Bradley Keith Sleighter
82 50th Street SW, Apt. 323
Wyoming, Michigan 49548

Phone: (616) 805-0885