FILED
April 1, 2013 1:08 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY JEM /     SCANNED BY: NS/412

# UNITED STATES OF AMERICA
# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRADLEY KEITH SLEIGHTER,

    Plaintiff,

Case No. 1:12-cv-0763

Honorable Judge:
JANET T. NEFF

v.

KENT COUNTY CORRECTIONAL FACILITY
ADMINISTRATION,
UNDER SHERIFF HESS and
CAPTAIN RANDY DEMORY,

    Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### STATEMENT OF FACTS

1. In "Defendants' Brief in Opposition to Plaintiff's Motion for Class Certification", "Introduction" (Doc. #47), stating essentially that Plaintiff's complaint should be dismissed before the court considers "*Class Certification*" on the grounds that Defendants filed a motion (Doc. #29) for dismissal prior to Plaintiff's motion for "*Class Certification*".

    a. Plaintiff has already addressed this argument in PLAINTIFF'S RESPONSE TO DEFENDANTS' "AMENDED REQUEST TO DELAY CONSIDERATION OF CLASS ACTION STATUS" (Doc. #43).

        (1). Plaintiff has already set forth his argument and brief in support of his motion (Doc. #43) and relies upon the information contained therein in response to the Defendants current motion.

      b. Defendants continually imply, and attempt to persuade the court, that because they filed their motion to dismiss "first", that they have some form of *"prima facie"* grounds for dismissal prior to any other motions being heard. Plaintiff claims Defendants have no "statutory" claim or any other *"prima facie"* claim for dismissal. Defendants have failed to support their *"prima facie"* claim; not even with one single case law in support thereof. Whereas;

      (1). Plaintiff cites: Local Rule 7.1(e) is as follows: **Motion for expedited consideration-** Where the relief requested by a motion may be rendered moot before the motion is briefed in accordance with the schedules set forth herein, the party shall so indicate by inserting the phrase "EXPEDITED CONSIDERATION REQUESTED," in boldface type… and shall identify in the motion the reason expedited consideration is necessary. See Docket #31.

      (a). Plaintiff has complied with the Local Rule 7.1(e) in his motion for *"Class Certification"*.

      2. Defendants are attempting to take Plaintiff's wording from his "Motion to Certify Case Number 1:12-cv-0763 as Class Action" (Doc. #31) out of context by implying that Plaintiff is petitioning the Court to act as *"pro se"* counsel for the *"Class"*. Contrary to Defendants' belief;

      a. Plaintiff states in paragraph #33 (Doc. #31): Rule 23 (a)(4) <u>the representative parties will fairly and adequately protect the interests of the class</u>. I would assert that I have the knowledge and understanding of cultural and religious beliefs throughout the world and am well informed of their dietary implications, practices, and requirements. I know this through empirical knowledge as well as a result of experiential knowledge. My "First Amended Complaint" shows my concern for all parties of this *"class"* and that I share the same interests of the *"class"* and that is to see "justice" prevail. My knowledge of jurisprudence is sufficient to proceed as a **plaintiff representative**[1] of this *"Class Action"* suit. I have the time, education, and resources (community religious interests) to commit myself to the *"class"*.

      (1). Plaintiff would further argue that, in fact, FRCP Rule 23(g)(2) does allow the Court to appoint the Plaintiff as *"pro se"* counsel for the *"Class"* (citation omitted).

      (2). Defendants cite *Oxendine v. Williams'* 509 F.2d 1405, 1407 (4th Cir. 1975) (citation omitted) in the objection to the appointment of Plaintiff as *"pro se"* counsel to the *"Class"*; Plaintiff points out that this case reference is a *"moot"* argument because in 1975 Rule 23 did not contain the provisions outlined in subsection (g). See **Committee Notes on Rules— 2003 Amendment:** *Subdivision (g).* **Subdivision (g) is new**. It responds to the reality that the selection and activity of class counsel are often critically important to the successful handling of a class action (further citation omitted).

---

[1] Not as pro se counsel.

(2). Plaintiff is simply stating that he meets the requirements of this rule and not that he is attempting to replace, and/or represent himself as legal counsel for the proposed "*Class*".

(a). The Supreme Court has rejected insufficient knowledge of the named plaintiff as a basis for denying class certifications. In *Surowitz v Hilton Hotels Corp*, 383 U.S. 363, 86 S.Ct 845, 15 L.Ed 2d 807 (1996) the plaintiff was uneducated generally, illiterate in economic matters, and demonstrated in her oral testimony she knew nothing about the content of the suit. Despite the plaintiff's ignorance, the Supreme Court found no evidence of collusive conduct or trickery and reversed the appellate court's dismissal of the suit. See *Meridith v Mid-Atlantic Coca Cola Bottling Co.*, 129 F.R.D. 130, 133 (ED Va 1989). *See* 2000 U.S. App. LEXIS 22162 at *25 (2d Cir. 2000) ("The Supreme Court in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-374, 15 L. Ed. 2d 807, 86 S. Ct. 845 (1966) expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance.")

(b). Under Rule 23(a)(4), a class representative must "fairly and adequately protect the interests of the class." Thus, class representative status may properly be denied "where the class representatives have so little knowledge of and involvement in the class action that they would be **unable or unwilling** to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995).

(c). Plaintiff further petitions the Court to appoint counsel to the "*Class*" in accordance with FRCP, Rule 23(g); Class Counsel: (1) *Appointing Class Counsel*: unless a statute provides otherwise, a court that certifies a class must appoint class counsel. (Paragraph 55 of Doc. #31).

3. Defendants argue that Plaintiff's Motion for Class Certification "ill-defines" the class.

a. Plaintiff relies on paragraph 22 of Doc. # 31, which states: The legal definition of "sincerely held religious belief" is intentionally vague to provide protection and accommodation for a broad spectrum of religious observances, practices and beliefs, not merely those beliefs based upon the organized or recognized teachings of a particular religion. Therefore, religious beliefs need not be acceptable, logical, consistent or comprehensible to others to be entitled to protection under the "Free Exercise" clause of the First Amendment of the United States Constitution and "RLUIPA", and the courts have not presumed to determine the place of a particular belief in a religion or the plausibility of a religious claim. In short, the fact that no religious group espouses such beliefs or that the religious group to which the individual professes to belong may not accept such belief, will not determine whether the belief is or is not a "sincerely held religious belief". Plaintiff further relies upon:

b. that the **Identity of Members Known v Unknown**. When the plaintiff has demonstrated that the class of persons he or she wishes to represent exists, the fact that they are

not specifically identifiable supports rather than bars the bringing of a class action because *"joinder"* is impracticable. *Doe v Charleston Area Medical Ctr., Inc.,* 529 F.2d 638, 645 (4th Cir. 1975). Moreover, it is not necessary that the members of the class be so clearly and completely identified that any member can be presently ascertained. *Haywood v Barnes,* 109 F.R.D. 568, 576 (EDNC 1986).

    4. Plaintiff, for clarification purposes, states that the *"Class"* he refers to is, in fact, defined and relies on "RLUIPA" to help define his *"Class"* of which he is a member. Relying on;

      a. SECTION 3. PROTECTION OF RELIGIOUS EXERCISE OF INSTITUTIONALIZED PERSONS [ACT].

        (1). **General rule**: No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. (b) Scope of application: This section applies in any case in which— (1)the substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

        (2). **Application:** "This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

        (a). "The RLUIPA standard poses a far greater challenge than does Turner to prison regulations that impinge on inmates' free exercise of religion." Freeman v. Texas Dep't of Criminal Justice, 369 F.3d 854, 858 n.1 (5th Cir. 2004). See also Khatib v. County of Orange, 639 F.3d 898, 903-04 (9th Cir. 2011) (rejecting county's narrow interpretation of RLUIPA, "**especially in light of the generous interpretative rule set forth by Congress**").

        (b). "**RLUIPA is to be construed broadly in favor of the inmate**" Putzer v. Donnelly, 2010 WL 2545566 at *6 (D. Nev. 2010).

(c) "[A]s opposed to the deferential rational basis standard of Turner v. Safely, RLUIPA requires the government to meet a much

stricter burden..." Hall v. Hedgpeth, 2011 WL 1675026, at *5 (N.D. Cal. 2011).

        (3). **Religious Exercise:** RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

(a) "Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion . . . the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." Cutter, 544 U.S. at 725 n.13.

(b). In assessing whether a practice is a religious exercise within meaning of RLUIPA, courts must not judge the significance of the particular belief or practice in question. Abdulhaseeb v. Calbone, 600 F.3d 1301, 1314 n.6 (10th Cir. 2010).

(c). "We emphasize that no test for the presence of a 'substantial burden' in the RLUIPA context may require that the religious exercise that is claimed to be thus burdened be central to the adherent's religious belief system." Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004), cert. denied, 125 S. Ct. 2549 (2005); id. at 568 (finding that Sabbath and holy day gatherings "easily qualify as 'religious exercise' under the RLUIPA's generous definition").

(d). "[A] religious exercise need not be mandatory for it to be protected" under RLUIPA. Kikumura, 242 F.3d at 960 (pastoral visits).

(e). "RLUIPA broadly protects "any exercise of religion" and does not require that the practice be central to Plaintiff's system of beliefs." Roman Catholic Bishop v. City of Springfield, 760 F.Supp.2d 172, 186 (D. Mass. 2011) (land use case).

(f). "While defendants argue that other Muslims interpret these creeds less strictly, permitting adherents to prepare pork while wearing gloves, they do not cast doubt on the sincerity of Williams' interpretation. And, for purposes of RLUIPA, it matters not whether the inmate's religious belief is shared by ten or tens of millions. All that matters is whether the inmate is sincere in his or her own views." Williams v. Bitner, 359 F. Supp. 2d 370, 375-76 (M.D. Pa. 2005), aff'd, 455 F.3d 186 (3d Cir. 2006).

(g). See also Koger v. Bryan, 523 F.3d 789, 794 (7th Cir. 2008) (plaintiff's request for a vegetarian diet was a religious exercise, not withstanding the fact that plaintiff's religion (Ordo Templi Orientis) has "no general dietary restrictions," because OTO practitioners "may, from time to time, include dietary restrictions as part of [their] personal regimen of spiritual discipline," and that is sufficient for RLUIPA); Morrison v. Garraghty, 239 F.3d 648, 659 (4thCir. 2001) (holding that "[d]iffering beliefs and practices are not uncommon among followers of a particular creed, and it is not within the judicial function and judicial competence to inquire whether the petitioner or another practitioner more correctly perceives the commands of their common faith" (internal alterations, citations and quotations omitted)) (analyzing First Amendment claim).

(4). **Substantial Burden**: [A] government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. And, in line with the

foregoing teachings of the Supreme Court, the effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed. Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004) (footnotes omitted).

(a). "[A] burden is substantial under RLUIPA when the state 'denies an important benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Shakur v. Schriro, 514 F.3d 878, 888 (9th Cir. 2008) (quoting Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005)).

(b). [A] burden is substantial under RLUIPA when the state 'denies an important benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Shakur v. Schriro, 514 F.3d 878, 888 (9th Cir. 2008) (quoting Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005)).

(c). "[A] substantial burden exists under RLUIPA where either (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Houseknecht v. Doe, 653 F. Supp. 2d 547, 559 (E.D. Pa. 2009).

(d). "[S]tate action substantially burdens the exercise of religion within the meaning of the RLUIPA when it prevents a religious adherent from engaging in conduct both important to the adherent and motivated by sincere religious belief." Coronel v. Paul, 316 F. Supp. 2d 868, 880 (D. Ariz. 2004); id. at 882 (denying Pagan prisoner permission to attend Yaqui Indian and Native Hawaiian religious services may constitute substantial burden).

5. **THE FIRST AMENDMENT Argument:** In cases in which RLUIPA and RFRA are not available, prisoners' religious claims are governed by the First Amendment. Restrictions on prisoners' First Amendment rights are governed by the test set forth in Turner v. Safley, 482 U.S. 78, 89 (1987): the restriction is valid "if it is reasonably related to legitimate penological interests."

a. Under the Turner standard, the following restrictions on religious exercise have been found to violate the First Amendment:

(1). **Failure to accommodate religious dietary rules**. Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003) ("We . . . have clearly established that a prisoner has a right to a diet consistent with his or her religious scruples"); Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002) (punishing plaintiff for religious fasting); Beerheide v. Suthers, 286 F.3d 1179, 1192 (10th Cir. 2002) (requiring co-pay from prisoners requesting Kosher meals); Makin v. Colorado Dep't of Corrections, 183 F.3d 1205 (10th Cir. 1999) (failure to accommodate Muslim prisoner's fasting requirements during Ramadan); Ashelman v. Wawrzaszek, 111 F.3d 674, 678 (9th Cir. 1997) (failure to provide Kosher meals); see also Levitan v. Ashcroft, 281 F.3d 1313 (D.C. Cir. 2002) (reversing summary judgment for defendants in Catholic prisoners' challenge to denial of communion wine).

6. Defendants further claim that Plaintiff's definition is "overly-broad and confusing".

a. Plaintiff states the "*Class*" is to be defined as "a person incarcerated within the Kent County Correctional Facility, past, present and/or future, which has 'a sincerely held religious belief', which requires and/or relies on a "religious diet" within his/her belief system(s).

(1). Plaintiff claims that not only does his complaint meet the standard requirements of RLUIPA; it also asserts a "*Class*" which also complies with the definitions set forth in RLUIPA.

(a). Plaintiff argues that if the Defendants are alleging that Plaintiff's definition of his "*Class*" is "overly-broad and confusing", then the Defendants need to familiarize themselves with the wording of RLUIPA and if they still feel that Plaintiff's definition of the "*Class*", in question, is "overly-broad and confusing" then they need to challenge the United States Congress, because the Plaintiff has based his "First Amended Complaint" and his motion for "*Class Certification*" on the provisions and wording of RLUIPA.

(2). Plaintiff has left the "title" for this "*Class*" to be determined by the Court. Defendants have **implied** that since the "*Class*" is not "titled" it therefore does not define a "*Class*". Plaintiff relies on the above definition (paragraph 6a) as the "*Class*".

(3). Plaintiff understands that Defendants do not understand the definition of "sincerely held religious belief" and do not understand the provisions of religious dietary requirements. This lack of understanding does not negate their responsibility under the provisions of RLUIPA; as well, it gives strength to "*Class Certification*".

(a). Defendants failed to understand Plaintiff's reference to different world religions which require special dietary practices. Plaintiff used this reference in "Motion to Certify Case Number 1:12-cv-0763 as '*Class Action*'" only as an example to illustrate the scope of such requirements and to introduce the possibilities of such beliefs in Grand Rapids, Michigan. See Docket Number 31, paragraph 20a-j, which states: "The scope of

this denial affects adherents of an undetermined number of religions. The following is **an example**, but not limited to..."

            (i). Plaintiff would add that while he was incarcerated at KCCF he met adherents to the "Seventh Day Adventist" teachings, Muslims, Hebrew Israelites, Vegetarians, Vegans, adherents to Jewish Kosher Law (kosher), Buddhists from Viet Nam and Burma (Myanmar) as well as others who did not eat meat for other reasons, including health reasons; all of which incorporated some religious dietary practices. These people are representative (a "*Class*") of Grand Rapids and its surrounding area, for which KCCF serves.

  7. Defendants argue in support of denying Plaintiff certification as "*Class Action*" based on the prospective individual members of the "*Class*" not exhausting his/her administrative remedies.

    a. Administrative remedies in jails and/or prisons are accomplished by an inmate grievance procedure.

      (1). Kent County Correctional Facility (KCCF) essentially does not offer inmates an "administrative remedy" and/or a remedy through an "inmate grievance procedure".

        (a). Inmates at KCCF are prohibited from filing any form of "grievance" in relationship to jail policy, medical issues, classification decisions, and a number of other issues outlined in the KCCF inmate guide book. In essence inmates have no recourse to resolve issues confronting an individual incarcerated at KCCF other than through the courts. KCCF's "grievance" policy lists so many things that a "grievance" cannot be used for, one is left wondering as to what a "grievance" can be used for. Also, "grievance" forms are not readily available to its inmate population. Plaintiff spent 10 months at KCCF and never saw anyone with an alleged "grievance" form, even after multiple requests, from the administration, for alleged "grievance" forms were made.

    b. Therefore, Defendants cannot raise this issue as an avenue for dismissal of a complaint and in this case a denial to certify Plaintiffs case as "*Class Action*".

  8. Defendants also request the Court to deny Plaintiff's "Motion to Certify Case Number 1:12-cv-0763 as 'Class Action' based on their argument that "*Class*" certification would be inappropriate to the defense "due to the many issues that would need to be decided on an individual basis".

    a. Plaintiff claims that there is no legal precedence for such an argument in opposition to certification as "*Class Action*". The statement of the Defendants "due to the many issues that would need to be decided" supports *certification* as opposed to denying the motion for *certification*.

(1). A class action will often involve both questions common among the class membership and questions (such as damages in a personal injury lawsuit) individual to class members. Rule 23 does not require that every question of law or fact be common to every class member. See *Haywood v Barnes*, 109 F.R.D. 568, 577 (EDNC 1986); *Port Auth. Police Benevolent Ass'n, Inc. v Port Auth. of New York and New Jersey*, 698 F.2d 150 (2d Cir. 1983). As stated in *Central Wesleyan College v W.R. Grace & Co.*, 143 F.R.D. 628, 636 (DSC 1992), *affd*, 6 F.3d 177 (4th Cir. 1993): "This subsection [23(a)(2)] does not require that all, or even most, issues be common, nor that common issues predominate, but only that common issues exist." See also *Holsey v Armour & Co.*, 743 F.2d 199, 216-217 (4th Cir. 1984), *cert denied*, 470 U.S. 1028 (1985). Although differences among the class members are relevant under other Rule 23 requirements, differences among class members does not necessarily undermine commonality as long as the resolution of the common questions affects all or a substantial number of the members. *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir.), *cert. denied*, 510 U.S. 991, 126 L. Ed. 2d 450, 114 S. Ct. 548 (1993).

(2). The party opposing certification may contend that class certification is inappropriate, not only because the establishment of actual damages will create a plethora of individual damages issues, but also because many of the plaintiffs claims are subject to "other defenses and counterclaims" which will require individual treatment. **Potential counterclaims do not defeat class certification**. See *Davis v. Cash For Payday, Inc.*, 193 F.R.D. 518, No. 00 C 34, 2000 WL 639734, at *2 (N.D. Ill. Apr. 26, 2000) (citing *Haynes v. Logan Furniture Mart Inc.*, 503 F.2d 1161, 1164-65 (7th Cir. 1974)); *Pinkett v. Moolah Loan Corp.*, 1999 U.S. Dist. LEXIS 17276, at *14 No. 99 C 2700, 1999 WL 1080596, at *3-4 (N.D. Ill. Nov. 2, 1999) ("**It is well established that individual counterclaims or defenses do not render a case unsuitable for class certification**").

9. Defendants argue that "it would be inappropriate to certify this case as a "*Class Action*" in that the Plaintiff's claims are subject to defenses, which are unique to the Plaintiff".

a. Plaintiff claims that this argument does not preclude him from the "typicality" or "adequacy" requirement, as Defendants allege.

(1). Courts have uniformly held that a claim is typical if it arises from the same event or course of conduct giving rise to the claims of other class members and is based on the same legal theory. *E.g., De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir.), *cert. denied*, 429 U.S. 870, 50 L. Ed. 2d 150, 97 S.Ct. 182 (1976); *Dornberger v. Metropolitan Life Insurance Co.*, 182 F.R.D. 72 (SDNY 1998); *Dura-Bilt Corp. v. Chase Manhattan Bank*, 89 F.R.D. 87, 98 (SDNY 1981). This requisite for typiClass Action Litigationty guarantees that the class representatives share issues common to other class members. *Harriston v Chicago Tribune Co*, 992 F2d 697, 703 (7th Cir. 1993). (To have standing to sue as a class representative, the plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members.") *See*

*also, General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982). If, by advancing their own interests, the named plaintiffs also advance the interests of the proposed class, then the typiClass Action Litigationty requirement will have been met. *Green v. Wolf Corp.,* 406 F.2d 291, 299 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 23 L. Ed. 2d 766, 89 S. Ct. 2131 (1969).

(2). The typiClass Action Litigationty test does not require that the representatives have claims identical to other members of the class. See *Bates v Tenco Services, Inc.* 132 F.R.D. 160, 163 (DSC 1990). Factual Variations between claims will not defeat typiClass Action Litigationty. *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992); *Meredith v Mid-Atlantic Coca Cola Bottling Co,* 129 F.R.D. 130, 133 (ED Va 1989). Moreover, "even relatively pronounced factual differences will generally not preclude a finding of typiClass Action Litigationty where there is a strong similarity of legal theories." *Baby Neal v. Casey,* 43 F.3d 48, 58 (3d Cir. 1994).

(3). The adequacy and typiClass Action Litigationty requirements "serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S. Ct. 2231, 2251 n. 20, 138 L. Ed. 2d 689 (1997) (quotation omitted). These issues are committed to the trial court's discretion. "A district court has broad discretion in determining whether to certify a class, and its determination will not be overturned absent a showing that it abused its discretion." *Gilbert v. City of Little Rock,* 722 F.2d 1390, 1399 (8th Cir. 1983), *cert. denied,* 466 U.S. 972, 80 L. Ed. 2d 820, 104 S. Ct. 2347 (1984).

## CONCLUSION AND CLAIM FOR RELIEF

10. Plaintiff alleges that the Defendants' attorneys, Varnum LLP, are not experienced enough and/or knowledgeable enough in the provisions of RLUIPA to prevail in this litigation, especially in light of its history, and that they are simply acting as attorney do.

a. Plaintiff has claimed that Kent County Correctional Facility's food service provider Aramark has provisions for appropriate and/or acceptable religious diets, outlined in their "Medical Nutrition Therapy and Religious Meals Manual", and the Defendants failed and continue to fail to comply with these provisions which are based on federal and state standards for religious diets in violation of RLUIPA; thus violating its inmate population numerous civil rights.

b. Plaintiff offered Defendants an opportunity to settle this case prior to his filling his motion for "*Class Certification*"; Defendants responded by filling numerous motions since,

including objections to *"Class Certification"*, motions to dismiss, motion to delay consideration, and several responses to Plaintiff's fillings.

    c. Plaintiff would be willing to settle this case with the relief outlined in his "First Amended Complaint":

    (1). "30 b. Order the Defendants, their officers, agents, employees, subordinates, contractors, successors in office, and all those acting in concert or participation with KCCF to provide nutritionally sound kosher as well as other religiously appropriate meals."

    (2). Award Plaintiff $1 in compensatory damages and $1 in punitive damages against each defendant and require Defendants to cover all court costs incurred in this litigation.

    (3). Implement a policy at KCCF that would inform its inmates as to their rights of having a religious diet, if they choose.

    (4). Make the settlement a matter of "Public Record".

    d. Plaintiff alleges that this litigation, not only is putting undue burden on the Courts, but also is preceding at the expense of the Kent County tax payers.

    e. Plaintiff claims that his proposed settlement is, not only reasonable, cost effective, and is in the best interest of all involved and fulfill his pursuit of Justice.

11. Plaintiff relies upon all supporting information in "Motion to Certify Case Number 1:12-cv0763 as 'Class Action' (Doc. #31) in support of *"Class Certification"*. Plaintiff respectfully requests that the Court rule in favor of Plaintiff's motion to "Certify" Plaintiff's case as *"Class Action"*

12. Plaintiff relies on the information in PLAINTIFF'S RESPONSE TO DEFENDANTS' "AMENDED REQUEST TO DELAY CONSIDERATION OF CLASS ACTION STATUS" (Doc. #43) as further defenses to "Defendants Brief in Opposition to… Class Certification" (Doc. #47).

13. Plaintiff relies on the information in this response to the "Defendants Brief in Opposition to… Class Certification" which further clarifies his argument in support of *"Class Certification"* (Doc. #47).

14. Plaintiff relies upon Local Rule 7.1(e) and request that the Court grant "Expedited Consideration Requested" for Docket Number 31 as outlined in said motion.

15. Plaintiff further request that the Court dismiss "Defendants Brief in Opposition to… Class Certification" (Doc. #47).

Dated March 27, 2013  /s/ Bradley Keith Sleighter
Bradley Keith Sleighter
82 50th Street SW, Apt. 323
Wyoming, Michigan 49548

Phone: (616) 805-0885
Email: bradsleighter@gmail.com

# CERTIFICATE OF SERVICE

I, the plaintiff, certify that on March 27th, 2013, a true and correct copy of "PLAINTIFF'S RESPONSE TO DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION" was sent by electronic email to attorney Peter A. Smit at pasmit@varnumlaw.com, and to the Defendants Kent County Correctional Facility at kentsheriff@kentcountymi.gov and that a true and correct copy was placed in the US mail, postage prepaid, to The US District Court, 110 Michigan NW, Grand Rapids, Michigan 49503.

Mailed by:  /s/ Kathie Moore
Kathie Moore
Email: kathiemorre@email.grcc.edu

Plaintiff:  /s/ Bradley Keith Sleighter
Bradley Keith Sleighter
82 50th SW, Apt. 323
Wyoming, Michigan 49548

Phone: (616) 805-0885
Email: bradsleighter@gmail.com