Case 1:12-cv-00763-JTN-ESC Doc #50 Filed 05/29/13 Page 1 of 10 Page ID#407

FILED - GR
May 29, 2013 9:23 AM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY JEM /     SCANNED BY   / 5/29

# UNITED STATES OF AMERICA
# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRADLEY KEITH SLEIGHTER,

    Plaintiff,

Case No. 1:12-cv-0763

**Honorable Janet T. Neff**

v.

KENT COUNTY CORRECTIONAL FACILITY
ADMINISTRATION,
UNDERSHERIFF JON HESS and
CAPTAIN RANDY DEMORY,

    Defendants

## PLAINTIFF'S "OBJECTIONS" AND RESPONSE TO COURT'S "REPORT AND RECOMMENDATIONS" (DOCKET #49)

## STATEMENT OF FACTS

    1. Defendants filed "Motion to Dismiss" (Docket #29) and brief in support of their motion (Docket #30).

    2. Plaintiff filed Motion to Certify Case 1:12-cv-073 as Class Action (Docket #31) and put in bold face type EXPEDITED CONSIDERATION REQUESTED in the heading of the motion in compliance with Local Rule 7.1(e) based on the fact that if Defendants' Motion to Dismiss should be granted then Plaintiff's Motion to Certify Class would be moot.

        a. Local Rule 7.1(e) Motion for expedited consideration-Where the relief requested by a motion may be rendered moot before the motion is briefed in accordance with the schedules set forth herein, the party shall so indicate by inserting the phrase "EXPEDITED

CONSIDERATION REQUESTED," in boldface type, below the case caption, and shall identify in the motion the reason expedited consideration is necessary.

3. Plaintiff then filed a Response to Defendants' Motion to Dismiss (Docket #33) and outlined his argument as to why the case should not be dismissed.

    a. Plaintiff, pro se, is somewhat unclear as to the purpose of filing a response to a motion if the Court is not willing to consider the Plaintiff's opposition to their Motion to Dismiss.

    b. Plaintiff outlined a clear and concise argument against dismissal of this case in Docket Number 33 and the Court made absolutely no reference to this opposition to Defendants' Motion to Dismiss in their Report and Recommendations (Doc. #49).

4. Then Defendants filed DEFENDANTS' REPLY TO "PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS" (Docket #42). In this filing Defendants attempt to further argue in favor of dismissal.

5. Plaintiff then filed his response to Docket Number 42 and detailed further arguments in opposition to dismissal of this case (Docket #45).

6. Plaintiff is once again unclear as to why the Court failed to consider further arguments for and against dismissal of this case.

    a. Plaintiff would have grounds to appeal, to the US Court of Appeals for the 6th Circuit, any Court Order to dismiss case 1:12-cv-0763 without considering other arguments for and against dismissal, outlined in Docket Numbers 33, 42, and 45 as well as not ruling on Docket Number 31 which put forth in bold face type "Expedited Consideration Requested to Certify Case Number 1:12-cv-0763 as Class Action", as well as considering Defendants' oppositions to Class Certification and Plaintiff's Responses to their oppositions.

## **PLAINTIFF'S LEGAL STANDING TO MAINTAIN THIS COMPLAINT**

7. In plaintiffs Amended Complaint he states clearly in paragraph 28 "Prayer for relief":

"I also seek compensatory relief from the Defendants". Then in paragraph 28c he prays the Court "Order such other relief as the interest of justice may allow and require". Both of which would comply with the wording of RLUIPA's "Appropriate Relief" clause and would include nominal damages.

a. RLUIPA is plenty clear. "Appropriate relief" appears over 100 times in the United States Code, and Congress routinely uses this terminology to encompass compensatory and nominal damages. This conclusion is also strengthened by RLUIPA's structure and legislative history.

b. RLUIPA's authorization of damages serves a narrow—but critical—purpose. It ensures that inmates have some way to vindicate the rights guaranteed by Congress. The waiver of immunity* is exceedingly narrow because the Prison Litigation Reform Act bars almost all monetary relief except nominal damages. These nominal damages serve not to enrich plaintiffs, but to vindicate fundamental rights. Nominal damages preserve cases from mootness, a frequent occurrence in prison litigation. Without nominal damages to keep claims live, States are encouraged to engage in gamesmanship and to moot meritorious claims. Because nominal damages have only a *de minimis* effect on state coffers, they do not undermine the purposes of the Eleventh Amendment.

*(1). Plaintiff would further argue that though the State enjoys immunity under the protection of the 11th Amendment, county, city, and inferior governmental bodies under the state do not enjoy the same immunity and their immunity is much more limited, if non-existent.

(a). Municipalities do not enjoy absolute or qualified immunity from § 1983 suits, *see Monell v. New York City Dept. of Social Services,* 436 U.S. at 701, 98 S.Ct., at 2041; Owen v. City of Independence, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673. Municipalities do not enjoy immunity from suit either absolute or qualified under § 1983. In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury. Plaintiff claims such an action in this case and that Kent County has no claim of immunity to prosecution in this case.

(b). The Eleventh Amendment interest in protecting the state is not undermined by RLUIPA because its operation is almost entirely limited to nominal damages. The Eleventh Amendment is not a blanket exemption from all suits that might affect the state treasury, however remotely. "[R]elief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." Papasan v. Allain, 478 U.S. 265, 278 (1986); see also Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 440 (2004) (ancillary powers include attorneys' fees, consent decrees, and monetary penalties for failure to follow injunctions). Here, the argument is even stronger because the effect on the county's treasury would not be "substantial," but negligible, if at all.

c. "Nominal damages are damages in name only." Dan B. Dobbs, Law of Remedies § 3.3(2), at 221 (2d ed. 1993). Historically, "[t]he most obvious purpose [of nominal damages] was to obtain a form of declaratory relief in a legal system with no general declaratory

judgment act." Douglas Laycock, Modern American Remedies: Cases and Materials 561 (3d ed. 2002). Under Carey, their purpose is not compensation, but the vindication and preservation of fundamental rights. See 435 U.S. at 266-67. The Plaintiff's case is clearly evident in that he is attempting to insure and advance the civil right(s) guaranteed by the US Constitution and is not seeking monetary gain.

      d. Nominal damages here are therefore akin to prospective relief, which is available in the face of the Eleventh Amendment because "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." Green v. Mansour, 474 U.S. 64, 68 (1985). As a remedy targeted at enforcing federal rights, rather than draining the fisc, nominal damages do not trigger the same alarms as compensatory damages. Their purpose is to allow the district court to vindicate federal rights and serve as a predicate for prospective relief should the conduct reoccur.

      e. A review of the United States Code indicates that Congress routinely uses the term "appropriate relief" to indicate the availability of compensatory and nominal damages. "Appropriate relief" occurs in 120 sections of the United States Code.

      f. A study of the use of "appropriate relief" in the United States Code indicates that it is an umbrella term routinely used to encompass nominal and compensatory damages. Thirty-six of the uses, including RLUIPA, use no modifying phrases (such as "including" or "excluding" the type of relief one can or cannot realize).

      g. More importantly, when Congress has modified the term "appropriate relief," it has done so in a way that shows "appropriate relief" already includes damages. For example, only twice has Congress authorized appropriate relief and then excluded a particular remedy from that term. And in both instances, Congress modified the term to exclude damages. See 15 U.S.C. § 797(a)(5) (authorizing "a civil action for appropriate relief," but stating that "nothing in this paragraph shall authorize any person to recover damages"); 42 U.S.C. § 6395(e)(1)(authorizing "an action * * * for appropriate relief," but stating that "[nothing in this subsection shall authorize any person to recover damages").

      h. If Congress must modify the term to exclude damages, it stands to reason that "appropriate relief" must otherwise include damages. It also demonstrates that Congress knows how to exclude damages as a form of appropriate relief, should it so choose. Cf. Hardt v. Reliance Standard Life Ins. Co., 130 7 S.Ct. 2149, 2156 (2010) (contrasting paragraphs in ERISA show that "Congress knows how to impose express limits" when it so intends).[1]

---

[1] Congress has also demonstrated that it knows how to avoid waivers of sovereign immunity when needed. See 18 U.S.C. § 2346 (authorizing "appropriate relief," but stating, "Nothing in this chapter shall be deemed to abrogate or constitute a waiver of any sovereign immunity of a State or local government, or an Indian tribe * * * or otherwise to restrict, expand, or modify any sovereign immunity of a State or local government, or an Indian tribe.").

i. RLUIPA provides that "nothing in this [statute] shall be construed to amend or repeal the Prison Litigation Reform Act of 1995." 42 U.S.C. § 2000cc-2(e). One of the primary purposes of the PLRA was to limit, but not eliminate, damages awards to prisoners. Pet. Br. 22-23. Thus, the implication of this provision is that Congress knew it was authorizing damages, but did not want to disturb the damages limitations in the PLRA.

j. RLUIPA contains a rule of construction stating that "[t]his Act shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this [Act] and the Constitution." 42 U.S.C. § 2000cc-3(g). This provision, too, counseled against giving the term "appropriate relief" an unnecessarily narrow interpretation.

k. Before passing RLUIPA, Congress considered the remedies that would be granted. As part of the congressional record, Douglas Laycock, professor and author of the leading casebook on remedies, Modern American Remedies: Cases and Materials (3d ed. 2002), presented written testimony to the House Subcommittee on the Constitution and to the Senate Judiciary Committee on the bill that ultimately became RLUIPA. His analysis explained that "appropriate relief includes declaratory judgments, injunctions and damages." Religious Liberty Protection Act: Hearing on H.R. 1691 before the Subcommittee on the Constitution of the House Committee on the Judiciary, 106th Cong. 219 (May 12, 1999). This is further evidence that Congress intended "appropriate relief" to carry its established meaning and to authorize suits for compensatory and nominal damages.

l. RLUIPA's authorization of nominal damages serves a vital purpose: the preservation of claims. As this Court explained in Carey v. Piphus, nominal damages are appropriate in cases where the plaintiff alleges the violation of an absolute right. 435 U.S. 247, 266-67 (1977). Their purpose is not to compensate the plaintiff, but to "mak[e] the deprivation of such rights actionable" in the absence of a compensable injury. Ibid.; see also Amato v. City of Saratoga Springs, 170 F.3d 311, 317, 319 (2d Cir. 1999) (nominal damages "guarantee that unconstitutional acts remain actionable"). A valid claim of nominal damages also typically defeats a claim of mootness. 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3533.3 (3d ed. 2008).

m. States often attempt to use mootness to their advantage, litigating to judgment against weaker claims brought by pro se inmates, while avoiding stronger claims backed by experienced counsel. This gamesmanship deprives courts of the benefit of "sharply presented issues" with "self-interested parties vigorously advocating opposing positions." Grant ex rel. Family Eldercare v Gilbert, 324 F.3d 383, 390 (5thCir. 2003). It also gives States the benefit of favorable precedent obtained in poorly litigated cases, while leaving them free in mooted cases to "resume the complained of activity without fear of flouting the mandate of a court." Sossamon, 560 F.3d at 324. In short, it allows States to pick and choose their opponents.

n. In short, absent nominal damages, States have a powerful incentive to use mootness to their advantage, selectively litigating cases in a way that undermines the protections afforded under RLUIPA. Thus, nominal damages are a crucial piece of the "appropriate relief" puzzle, guaranteeing that States cannot avoid a ruling merely by rendering the case moot.

8. The Court states that the Plaintiff cannot obtain damages under RLUIPA citing Colvin v. Caruso, 605 F. 3rd at 289 (2010). In fact the Court is correct that in citing this ruling Colvin was unable to obtain monetary damages. However, in a later ruling, Colvin v. Caruso, **852 F.Supp.2d 862.870 (2011) United States District Court, W.D. Michigan, Northern Division,** the court rules as follows: "Finally, it should be noted that damages cannot be awarded against defendants Riley and Burnett in their individual capacities under RLUIPA. The Court will, however, order defendants Gerald Riley and Dave Burnett to pay **Colvin** nominal damages of $1.00 each".

    a. In light of this more recent ruling and my above argument in favor of nominal damages, the Plaintiff alleges that RLUIPA does allow the Plaintiff relief in this case and therefore the case is not moot and is not subject to dismissal.

9. The Court claims that the Plaintiff cannot obtain declaratory relief because the Plaintiff is no longer in jail.

    a. The Plaintiff claims that declaratory relief can be realized if the case were certified as "Class Action". Plaintiff's motion to certify this case as Class Action (Doc. #31) must be ruled on before determining whether Plaintiff can or cannot realize declaratory relief.

    b. Plaintiff argues that as a resident of Kent County he is subject to any unforeseen future incarceration and if this case did not result in the Defendants making substantial and sustainable changes to its religious dietary policies then the dismissal of this case would result in future litigation. Dismissal of this case would not bare the Plaintiff from future complaints under the provisions of 42 USC §1983 and RLUIPA against KCCF for any violations of the Plaintiff rights if re-incarcerated (unfortunately the Plaintiffs history of incarceration in the Kent at County Jail, in all probability, is possible).

    c. Plaintiff sees an additional problem in applying federal case law that makes prisoners §1983 complaints moot upon transfer to a different facility if the inmate does not word the complaint to include the Department of Corrections as Defendants as opposed to filing suit against the prison they are in. Federal case law supports that an inmate cannot realize injunctive and/or declaratory relief once transferred.

    (1). The Plaintiff would like to introduce the idea that, unlike typical prisoner complaints which can, in reality, realize declaratory and/or injunctive relief due to their lengthy incarcerations, inmates subject to violations of their civil rights in a county jail situation cannot, in all reality, realize any injunctive and/or declaratory relief short of class action

certification due to their short incarcerations (less than 1 year in almost all cases in the State of Michigan). This is not enough time for a complaint to evolve to fruition for the one who suffered violations at the hands of their jailers and/or the administration; such as in the Plaintiff's case.

(2). This and in and of itself would not allow one incarcerated in a county or city jail situation to realize his/her pursuit of justice and effect positive changes for all affected by declaratory and/or injunctive relief. Thus, in this case, guaranteeing that KCCF provide "Religiously Appropriate Diets" for its inmate population like state and federal prisons do.

(3). Another factor is that most people who experience incarceration in a city or county jail do not have the knowledge and/or resources (including a law library in the jail) to prosecute a complaint under a §1983 action, let alone see the fruition of their efforts.

(4). Therefore, the Plaintiff now introduces the following: as the court clearly explained, in Plaintiff's §1983 complaint 1:12-cv-0910, "Plaintiff lists the Kent County Correctional Facility Administration as a Defendant. Plaintiff is essentially suing the Kent County Jail. The jail is a building, not an entity capable of being sued in its own right. *Cf. Travis v. Clinton Cnty. Jail,* No. 1:10-cv-1276, 2011 WL 447000, at *2 (W.D. Mich. Feb. 4, 2011). Moreover, the Kent County Correctional Facility is merely an arm of Kent County. Thus, construing Plaintiff's *pro se* complaint liberally, *see Haines v. Kerner,* 404 U.S. 519, 520 (1972), the Court assumes that Plaintiff intended to sue Kent County, the entity responsible for operation of the Kent County Correctional Facility. Accordingly, the U.S. Marshals Service shall serve Kent County".

(a). Plaintiff claims that based on this idea he can realize declaratory relief as he is a resident and registered voter of Kent County and a citizen of its entity; being released from the Kent County Jail does not negate Kent County's obligation to insure that it knowledgeably does not violate the civil rights of its citizens. The conclusion of this complaint will determine its obligations to insure that the jail follow the law.

(5). The same is true of claims that a case is not moot because the government's conduct is "capable of repetition, yet evading review." Davis v. Fed. Election Comm'n, 128 S. Ct. 2759, 2764 (2008). This exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Ibid. (internal quotation omitted). Inmates have a particularly difficult time proving that they satisfy this test because their conditions are entirely within the control of the State. States, not inmates, determine whether and how long a person is housed at a particular location or subject to particular policies. Inmates have no way to prove that a particular accommodation is temporary, or that a particular deprivation is likely to reoccur. See Moussazadeh, 2009 WL 819497, at *10 (dismissing his concern as "speculative"). Thus, this exception to mootness offers even less

protection than does the doctrine of voluntary cessation. Short of declaratory relief the Court will eventually have to deal with this issue again.

10. Concerning Plaintiff's alleged failure to comply with the discovery order he has outlined his position clearly in his Responses to Defendants motions to dismiss on these grounds.

a. Plaintiff would like it to be noted that in a separate §1983 action against Kent County Correctional Facility, case number 1:12-cv-1008, he released all medical, psychological, and other records to the Defendants. These records related directly to the Plaintiff's claims and therefore are necessary to proceed. Therefore Defendants do in fact have all the records they attempted to obtain in this case; they just obtained them for use in a different case.

(1). If dismissal of this case hinges on the Plaintiff not complying with the discovery order of the Court, and the Court is not willing to review Plaintiff's argument(s) that the records are not discoverable in this case (1:12-cv-0763), then Plaintiff willingly gives permission to the Defendants to use the records in their possession as they see fit in this case to avoid dismissal on the grounds of failing to comply with the discovery order of this Court.

11. The interests of the Eleventh Amendment—preventing States from "being hauled into federal court"—are not a concern here. Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico, 322 F.3d 56, 63 (1st Cir. 2003) (citing Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 760 (2002)). It is undisputed that by accepting federal funds Kent County waived its immunity to suits under RLUIPA for "appropriate relief," including declaratory judgments, injunctions and nominal damages. And if Kent County is willing to be hauled into federal court for these types of relief, it adds no indignity to add one dollar of nominal damages to resolve this case.

12. If the Court were to consider Plaintiff's Motion to Certify Case as Class Action (Doc. #31) then the Court would see that the Plaintiff offered the Defendants an opportunity to settle this case without undue further litigation. See Docket Number 31 paragraph 10(c)(1)(2)(3) and (4).

a. The Defendants have proposed a settlement which the Plaintiff is evaluating in light of the federal case law(s) and will continue to work to resolve the issue with the Kent County Defendants and their attorneys.

b. The premature and erroneous dismissal of this case would seriously undermine the Plaintiff's efforts to realize his pursuit of justice and insure that KCCF complies with the mandates of RLUIPA.

## PRAYER FOR RELIEF

13. Plaintiff prays that the Court respond to all motions filed by both the Defendants and the Plaintiff before considering any dismissal of this case. These motions and responses are set forth in Docket Numbers 31 through 49.

14. Plaintiff prays that the Court interpret the wording of RLUIPA and the above cited case (Colvin v. Caruso 2011), and rely upon all information presented in paragraphs 1-10 and sub-paragraphs of this "opposition to dismissal", in favor of the Plaintiff's right(s) to realize relief in the form of nominal damages, if not compensatory and/or punitive damages and not dismiss this case prematurely.

15. Plaintiff further prays that the Court consider any and all other relief that justice would allow to keep this case live and fulfill the purpose of 42 USC § 1983 and intention of RLUIPA.

## CONCLUSION

16. At the minimum, for the foregoing reasons outlined in this opposition to dismissal of case 1:12-cv-0763, the Court should conclude that prisoners may sue a County for compensatory and especially nominal damages under RLUIPA and therefore the Plaintiff's case is not subject to mootness and/or dismissal.

Dated: May 27, 2013

Bradley Keith Sleighter
82 50th street SW, Apt. 323
Wyoming, Michigan 49548

Phone: (616) 805-0885
Email: bradsleighter@gmail.com

# **CERTIFICATE OF SERVICE**

I, the plaintiff, certify that on May 27th, 2013, a true and correct copy of PLAINTIFF'S "OBJECTIONS" AND RESPONSE TO COURT'S "REPORT AND RECOMMENDATIONS" (DOCKET #49), was sent by electronic email to attorney Peter A. Smit at pasmit@varnumlaw.com and that a true and correct copy was mailed to The US District Court, 110 Michigan NW, Grand Rapids, Michigan 49503, postage pre-paid, by the US Postal Service.

Emailed by:
Mailed by:

*Kathie Moore*

Kathie Moore
Email: kathiemoore777@gmail.com

Plaintiff:

*Bradley K Sleighter*

Bradley Keith Sleighter
82 50th SW, Apt. 323
Wyoming, Michigan 49548